Keith ANDERSON and David
Perticone, Appellants,

v.

WILLIAM J. DAVIS, INC., Appellee.

No. 87–755.

District of Columbia Court of Appeals.

Submitted Dec. 7, 1988.
Decided Feb. 6, 1989.

Keith Anderson and David Perticone
filed a brief pro se.

Robert F. Leibner was on the brief, for
appellee. Lisa J. Dessel, Washington,
D.C., also entered an appearance for appellee.

Before FERREN and TERRY,
Associate Judges, and PRYOR, Senior
Judge.

TERRY, Associate Judge.

Appellee William J. Davis, Inc. ("Davis"),
filed this action against appellants
Anderson and Perticone for possession of
an apartment in a building owned by Davis.
The principal issue in the case was whether
appellants were "tenants" entitled to thirty
days' notice under relevant statutory provisions before being required to vacate the
premises. On the undisputed facts, the
court ruled that the relationship between
the parties was that of employer and employees, not that of landlord and tenants.
The court therefore granted Davis' motion
for summary judgment and entered a judgment for possession against appellants.
We affirm.

I

Appellant Anderson was employed by
Davis to work as a maintenance man in an
apartment building and later became its
resident manager. Appellant Perticone
was hired by Davis to serve as Anderson's
assistant. The two men shared an apartment in the building, which they were allowed to occupy as partial compensation
for their services. During the period of
their employment neither Anderson nor
Perticone paid rent to Davis at any time for
their use of the apartment, nor did they
ever execute a written lease.

In November 1986 both appellants were
notified in writing that their employment
was terminated, and that Davis needed to
regain possession of the apartment for new
employees. Appellants received no thirty-
day notice to quit, although it appears they
were given two weeks' notice of their discharge from employment. When they re-

fused to vacate the apartment, Davis filed this action for possession in January 1987.

## II

■ There are two statutes in the District of Columbia which protect tenants who do not have leases from sudden evictions. The first is D.C.Code § 45–1404 (1986), which provides in pertinent part:

A tenancy by sufferance may be terminated at any time by a notice in writing from the landlord to the tenant to quit the premises leased, or by such notice from the tenant to the landlord of his intention to quit on the thirtieth day after the day of service of the notice.

This statute was enacted in 1901 as part of the original District of Columbia Code. Act of March 3, 1901, ch. 854, § 1221, 31 Stat. 1382. Although it has been renumbered from time to time in successive editions of the Code, it has never been amended. The same is true of its companions, D.C.Code §§ 45–1402 and 45–1403 (1986), which deal respectively with month-to-month (or quarter-to-quarter) tenancies and tenancies at will. The second statute is D.C.Code § 45–2551 (1986), enacted as part of the Rental Housing Act of 1985.[1] Section 45–2551 provides that, with certain narrowly defined exceptions, "no tenant shall be evicted from a rental unit ... so long as the tenant continues to pay rent to which the housing provider is entitled for the rental unit." This court has "ruled on several occasions that rent control statutes [such as the 1985 Act] prevail over provisions adopted earlier that govern evictions, to the extent that the provisions conflict." *Habib v. Thurston*, 517 A.2d 1, 5 n. 3 (D.C.1985) (citing cases). We need not decide which of these statutes, section 45–1404 or section 45–2551, is controlling here

because we find no conflict between them. On the contrary, we hold that under either statute appellants cannot prevail.

The trial court relied on *Turner v. Mertz*, 55 App.D.C. 177, 3 F.2d 348 (1925), in ruling that appellants were not tenants within the meaning of the Code. *Turner* involved the identically worded predecessor of what is now D.C.Code § 45–1404. Although the court in *Turner* held that whether a master-servant or landlord-tenant relationship exists depends on the circumstances of each case, it also recognized a presumption that the occupancy of premises by an employee was not that of a tenant.[2] After citing several examples of non-tenants, including that of "a janitor in a building, who occupies a portion of the building as an incident to his service," the court held that "if [the putative tenant's] use of the premises was connected with and incidental to his services, and if the occupancy of the premises was for the convenience of the service, then the relation of master and servant would exist." *Id.* at 179, 3 F.2d at 350.[3] Accordingly, " '[w]hen the contract for services was terminated lawfully, the right of occupancy ceased in the servant, and the right of possession was in the master....' " *Id.* (citation omitted).

Appellants in the case at bar were employed by the owners of the apartment building to perform services in the building. They did not pay rent, did not have a lease, and were allowed to occupy the employer-landowner's apartment only as an incident to the services they provided. The conclusion is inescapable that they were servants, not tenants, and thus were not entitled as tenants to thirty days' notice to quit under D.C.Code § 45–1404. *See Smith v. Town Center Management Corp.*, 329 A.2d 779, 780 (D.C.1974) (dis-

---

1. D.C.Law No. 6–10, 32 D.C.Reg. 3089 (1985).

2. The presumption may be rebutted by a "showing of a distinct demise," such as a lease, or by other affirmative proof of a landlord-tenant relationship. *See Turner v. Mertz, supra,* 55 App. D.C. at 179, 3 F.2d at 350.

3. Other examples included a farm laborer occupying a house on the farm, a teacher occupying part of the school building, and a clergyman

occupying a parsonage. All such persons were deemed to be servants, not tenants. "As a general rule, it is held that a person who occupies the premises of his employer as part of his compensation is in possession as an employee, rather than as a tenant, where the occupancy is connected with and incidental to, or is required for the necessary or better performance of, his service." 49 Am.Jur.2d *Landlord and Tenant* § 55 (1970).

charged employee who stayed in apartment rent-free after being fired, with employer's permission, was not a tenant and thus was not entitled to notice to quit).

■ Appellants fare no better under D.C.Code § 45–2551. Included in the Rental Housing Act of 1985 is a list of definitions of terms used in the Act. One of those terms is "tenant," which is defined as a "person entitled to the possession, occupancy, or the benefits of any rental unit owned by another person." D.C.Code § 45–2503(36) (1986). The existence of a tenancy, therefore, is premised on the existence of a "rental unit." A "rental unit," under the 1985 Act, is defined as a housing accommodation "rented or offered for rent...." *Id.* § 45–2503(33). The relevant legislative history makes clear that the type of apartment at issue here, occupied by employees of the owner, is excluded from that definition:

> A "rental unit" is any part of a housing accommodation which is rented or offered for rent for residential use. It does not include a unit which is occupied by the owner *or the owner's agent or employee* as his or her dwelling and thus is not rented or offered for rent.

Council of the District of Columbia, Committee on Consumer and Regulatory Affairs, Report on Bill No. 6–33, the Rental Housing Act of 1985, at 20 (1985) (emphasis added). Although the definition of "tenant" in section 45–2503(36) does not apply to section 45–1404, it does apply to section 45–2551.[4] Moreover, it is entirely consistent with *Turner v. Mertz* and *Smith v. Town Center Management Corp., supra; see also Robbins v. Reagan,* 616 F.Supp. 1259, 1270–1271 (D.D.C.), *aff'd,* 250 U.S. App.D.C. 375, 780 F.2d 37 (1985).[5] Thus we hold that appellants were not tenants under the 1985 Act because they did not occupy a rental unit, and that they were therefore not entitled to thirty days' notice to quit.[6]

There being no material issue of fact, Davis was entitled to judgment in its favor as a matter of law.[7] The judgment of the Superior Court is accordingly

AFFIRMED.

---

**4.** The definitions in D.C.Code § 45–2503 are applicable only to "this chapter," *i.e.,* the Rental Housing Act of 1985. Sections 45–1402, 45–1403, and 45–1404 are in another chapter of the District of Columbia Code and antedate the 1985 Act by several decades.

**5.** In *Robbins* the District Court held that homeless persons living in a government building used as a shelter were not tenants within the meaning of D.C.Code §§ 45–1403, 45–1404, and the predecessor of what is now D.C.Code § 45–2503(36). "Because the government never sought nor received any rent for the use of the shelter, the shelter is not a rental unit. Thus plaintiffs, occupants of the shelter, are not tenants. Plaintiffs, therefore, are not entitled to 30 days' notice to quit." 616 F.Supp. at 1270.

**6.** Appellants' reliance on the broad definition of "tenant" in 14 DCMR § 199.1 (1986) is misplaced. To the extent that the regulation may be inconsistent with the definition of "tenant" in D.C.Code § 45–2503(36) (1986), the statute must prevail over the regulation. *See, e.g., Manhattan General Equipment Co. v. Commissioner,* 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936) (regulation which "operates to create a rule out of harmony with the statute, is a mere nullity"); *District of Columbia v. Catholic University,* 397 A.2d 915, 919 (D.C.1979) (regulation must be "consistent with the statute under which it was promulgated").

**7.** Appellants' remaining assignments of error warrant only the briefest comment. Their claim that the trial court's ruling deprived them of equal protection of the laws is entirely without substance. They have not shown and cannot show that they, as employees occupying their employer's premises, have been treated differently from other persons similarly situated. *See Robbins, supra,* 616 F.Supp. at 1269. Nor are they the victims of a suspect, or even quasi-suspect, classification. *See City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439–442, 105 S.Ct. 3249, 3253–3256, 87 L.Ed.2d 313 (1985). Their claim of arbitrary and prejudicial treatment by the trial court is refuted by the record, which reveals that the court acted with great patience and courtesy in dealing with two trying *pro se* litigants.